## INDIANA & CHICAGO COAL COMPANY *v.* NEAL.

[No. 20,822.    Filed May 11, 1906.]

1. NEGLIGENCE.—*Elements.*—Actionable negligence consists of three elements: (1) A duty from defendant to plaintiff, (2) a negligent breach of such duty by defendant, and (3) an injury to plaintiff by reason of such breach.   p. 460.

2. SAME.—*Statutory Duty.*—To recover damages by reason of defendant's violation of a statute, plaintiff must show that such statute was designed for his protection or benefit, and if enacted for a wholly different purpose than to prevent the injury complained of plaintiff cannot recover.   p. 460.

3. STATUTES.—*Mines.*—*Air Circulation.*—*Prior Statutes.*—Section 18 of the act of 1891 (Acts 1891, p. 57, §7478 Burns 1901), construed in the light of the act of 1885 (Acts 1885, p. 65, §2, §7443 Burns 1901), providing that all "breaks through" or airways shall be kept closed, when coal is being hauled through, by persons designated for that purpose, is designed to prevent any interference with the circulation of air in coal mines, and not to protect drivers in passing through such openings.   p. 463.

4. STATUTES. — *Construction.* — *General Language.* — *Special.*—
Where the context of a statute prescribes certain duties of mine
owners and operators and prescribes a liability for "any injury
to person or persons occasioned by any violation of this act"
(Acts 1891, p. 57, §13, §7473 Burns 1901), the word "any" refers
to injuries received by persons whom such statute was de-
signed to protect. p. 464.

From Sullivan Circuit Court; *Orion B. Harris,* Judge.

Action by James Neal against the Indiana & Chicago
Coal Company. From a judgment on a verdict for plain-
tiff for $500, defendant appeals. Transferred from Ap-
pellate Court under subd. 2, §1337j Burns 1901, Acts
1901, p. 565, §10. *Reversed.*

*John S. Bays, Lee F. Bays* and *E. E. Stevenson,* for
appellant.

*John T. Hays* and *Will H. Hays,* for appellee.

GILLETT, C. J.—This was an action by a servant against
his master for negligence. It appears that appellee, the
plaintiff below, was injured while driving with a car-load
of coal through a door opening into a coal mine. The door
was so constructed that it was self-closing, and appellee
was injured as he stood on the bumper and chain of the
car, and while engaged in the effort to keep the door open
as the car passed through, owing to the fact that he failed
to stoop sufficiently to permit his person to escape the lintel.
Appellant was charged with negligence in three particu-
lars: (1) In not affording a doorway of sufficient height;
(2) in furnishing a car that was too high; (3) in failing
to designate a person to open and close the door, as re-
quired by section eighteen of an act of the General Assem-
bly, approved March 2, 1891 (Acts 1891, p. 57, §7478
Burns 1901), entitled: "An act requiring the weighing
of coal, providing for the safety of employes, protecting
persons and property injured, providing for the ventilation
of mines, prohibiting boys and females from working in
in mines, conflicting acts repealed, and providing penalties
for violation."

The principal question in the case, which we shall consider upon the evidence, is whether there can be a recovery under the third charge of negligence above mentioned, and we proceed at once to a consideration of that question. Section eighteen, *supra,* is as follows: " 'Breaks through' or airways shall be made in every room at least every forty-five feet, and all 'breaks through' or airways, except those last made near the working faces of the mine, shall be closed up and made air-tight. The doors used in assisting or directing the ventilation of the mine when coal is being hauled through shall be opened and closed by persons designated to do the same, so that the driver or other persons may not cause the doors to stand open."

In *Faris* v. *Hoberg* (1893), 134 Ind. 269, 39 Am. St. 261, this court said: "In every case involving actionable negligence, there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient." See, also, *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558, and cases cited; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247. As respects actions wherein a statute is relied on to create a duty, the general rule has been thus declared by one of the older writers: "In every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of the wrong done to him contrary to said law." 1 Comyn's Digest, Action Upon Statute, *441 (F).

The limitation upon the rule which the above statement implies is well illustrated in *Ricketts* v. *East, etc., R. Co.* (1852), 12 C. B. 160. In that case the plaintiff's cattle had passed from his close to one adjoining the railroad, and had afterwards strayed through a gap in the fence, which separated the latter close from the right of way, onto the track, where they were killed. The plaintiff relied on a statute requiring the company to maintain "fences for separating the land taken for the use of the railway from the adjoining lands not taken and protecting such lands from trespass, or the cattle of the owners or occupiers from straying thereout by reason of the railway." In holding that there could not be a recovery, Williams, J., said: "The act of parliament creates no such general duty, but only a duty as between the company and the owners of the adjoining lands, and those in privity with them, and a stranger, as this plaintiff is, cannot found an action upon an alleged breach of that duty."

In *Gibson* v. *Leonard* (1892), 143 Ill. 182, 32 N. E. 182, 17 L. R. A. 588, 36 Am. St. 376, the members of a fire patrol broke into a burning store, for the purpose of covering the stock with tarpaulins. The plaintiff, who was a member of said company, and acting as such at the time, was injured, as he was operating a freight elevator, owing to the breaking of a counterweight. He based his claim of a right to recover upon a municipal ordinance requiring that in buildings where machinery was employed, such machinery, including elevators, "and every other thing, when so located as to endanger the lives and limbs of those employed therein while in the discharge of their duties," should be so "covered or guarded as to insure against any injury to such employes." It was held that the ordinance did not create a duty in favor of the plaintiff, as it showed that it was ordained for the protection of employes, and not for mere licensees.

In *O'Donnell* v. *Providence, etc., R. Co.* (1859), 6 R. I. 211, it is stated that the remedy for a violation of a statute is confined "to such things as are enacted for the benefit of the person suing." So it has been said: "However great the defendant's negligence, if it was committed without violating any duty which he owed either directly to the plaintiff or to the public in a manner whereof he had a right to avail himself * * * there is nothing which the law will redress." Bishop, Non-Contract Law, §446. It is stated by Judge Thompson, "that the violation of a statute or municipal ordinance is not of itself a cause of action grounded upon negligence in favor of an individual, unless the statute or ordinance was designed to prevent such injuries as were suffered by the individual claiming the damages, and often not then, the question depending upon judicial theories and surmises." Thompson, Negligence (2d ed.), §12.

A question may in some instances exist as to whether a statute or ordinance was designed to avert the evil consequences complained of, and in some cases there may be difficulty in determining whether the spirit of the requirement is bound down by its literalism in respect to the persons within its protection, but, subject to possible minor exceptions not pertinent to the facts of this case, it may be said that when it is determined that a statute or ordinance was enacted or ordained for a wholly different purpose than to prevent the injury complained of, or that the plaintiff does not belong to the class that the law was designed to protect, it follows that it will not avail to supply the element of a duty owing. *Zimmerman* v. *Baur* (1895), 11 Ind. App. 607; *New York, etc., R. Co.* v. *Martin* (1905), 35 Ind. App. 669; *Groves* v. *Wimborne* [1898], 2 Q. B. 402; *O'Donnell* v. *Providence, etc., R. Co., supra; Harty* v. *Central R. Co.* (1870), 42 N. Y. 468; *City of Rochester* v. *Campbell* (1890), 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. 700; *East Tenn., etc.,*

*R. Co.* v. *Feathers* (1882), 10 Lea 103; *Williams* v. *Chicago, etc., R. Co.* (1891), 135 Ill. 491, 26 N. E. 661, 11 L. R. A. 352, 25 Am. St. 397; *Bell* v. *Hannibal, etc., R. Co.* (1880), 72 Mo. 50; *Toomey* v. *Southern Pac. R. Co.* (1890), 86 Cal. 374, 24 Pac. 1074, 10 L. R. A. 139.

There can be no doubt, construing the section of the statute which is in question (Acts 1891, p. 57, §18, §7478 Burns 1901) in the light of section two of the act of 1885 (Acts 1885, p. 65, §7443 Burns 1901), regulating coal mines, that the provision relied on was solely designed to prevent an interference with the circulation of air, especially about the men who were employed at the working faces of the mine. In other words, the purpose of the statute was to keep such doors shut as far as possible, and it was not designed to provide aid for drivers who were passing through such openings. The enactment shows that the legislature has been at the pains expressly to state its reason for requiring trappers, namely, "so that the driver or other person may not cause the doors to stand open." It was declared in *Perkins* v. *Thornburgh* (1858), 10 Cal. 189, 191, that where a statute assumes to specify the effects of a certain provision, it will be presumed that all the effects intended by the lawmaker are stated. An apposite precedent upon the question in hand is found in the recent case of *Allen* v. *Kingston Coal Co.* (1905), 212 Pa. St. 54, 61 Atl. 572, where reliance was placed upon a similar statute as having created a duty in favor of an employe who had been found dead at a mine door, under circumstances indicating that he had been crushed between the frame of the door and the loaded car. The court said: "Appellant's case can get no assistance from the mining act of June 2, 1891 (P. L. 176). The requirement of section ten of that act, amended by the act of April 20, 1899 (P. L. 65), that all main doors shall have an attendant, 'whose constant duty it shall be to open them for transportation and travel, and prevent them from

standing open longer than is necessary for persons or cars to pass through,' has reference solely to ventilation, not to the safety of persons using the gangways. The object was to keep the doors closed."

It is clear upon the authorities that appellant cannot recover by virtue of the provisions of the statute upon which he relies, but in announcing this conclusion 4. we deem it proper to state that we have not been unmindful of the provision of section thirteen of the same act (§7473 Burns 1901), that for "any injury to person or persons occasioned by any violation of this act" a right of action shall accrue. It is true that the word "any" may be taken distributively as including all, but it is common in statutory construction so to restrain a universal word, as "all" or "every," as to make it comport with the general scheme of the statute in which it is found." *Phillips* v. *State, ex rel.* (1854), 15 Ga. 518; *Kieffer* v. *Ehler* (1852), 18 Pa. St. 388. "And the judges of the law," says Plowden, "in all times past have so far pursued the intent of the makers of statutes, that they have expounded acts which were general in words to be but particular where the intent was particular. * * * And those statutes which comprehend all things in the letter they have expounded to extend but to some things, and those which generally prohibit all persons from doing such an act they have interpreted to permit some people to do it, and those which include every person in the letter they have adjudged to reach to some persons only, which expositions have always been founded upon the intent of the legislature, which they have collected sometimes by considering the cause and necessity of making the act, sometimes by comparing one part of the act with another, and sometimes by foreign circumstances." *Stradling* v. *Morgan* (1560), 1 Plowd. *199, *204, *205. In several cases which we have cited in support of the proposition that a statute does not give a right of action in favor of a person who is not

within its purview, we find that the holdings were made notwithstanding the existence of a section which purported to afford a general remedy. *New York, etc., R. Co.* v. *Martin, supra; O'Donnell* v. *Providence, etc., R. Co., supra; Toomey* v. *Southern Pac. R. Co., supra.* To quote from Sir Frederick Pollock: "There is no cause of action where the damage complained of 'is something totally apart from the object of the act of parliament, as being evidently outside the mischiefs which it was intended to prevent." Webb's Pollock, Torts, 25. If this were a case in which a trespasser sought to invoke the provision requiring trappers, it would not admit of question that it would be the duty of the court so to restrain the general provision of the section granting the remedy as to exclude him, and so here, since it is evident that some exception should be made, the general grant of a remedy should, in accordance with the maxim of Lord Bacon, "be restrained unto the fitness of the matter or person."

We have serious doubt as to the sufficiency of the complaint in respect to the charge that the lintel was constructed too low, and also as to the charge that the car was too high, but it appears unnecessary to pass on the complaint, for the reason that appellee, if he has any case, has not made out one, and we assume will be unable to make out one, within the averments of his complaint. So far as appears, he could readily have stooped sufficiently to pass through the door had he been advised that it was necessary, and therefore the charges referred to are not sustained by the evidence. Whether, since the car was a new one and the bumpers thereof were higher than on the cars which had been in use, he has a cause of action for a failure to warn him, we leave undetermined.

Judgment reversed, and a new trial ordered