CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILROAD COMPANY *v.* BELANGE.

[No. 11,104.   Filed March 17, 1922.]

1. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of Risk.*—Generally, a servant entering into an employment which is hazardous assumes the risks of the employment, including those which are apparent to ordinary observation and those of which he has knowledge, and those risks not obvious which exist after the master has used due care and precaution to

Cleveland, etc., R. Co. *v.* Belange—78 Ind. App. 36.

guard him, and the dangers arising from defective conditions or appliances which the master could obviate, but of which the employe has knowledge, or such as are apparent to the employe's observation. p. 48.

2. MASTER AND SERVANT.—*Injuries to Servant.—Negligence.— Failure to Make Rules Governing Work.—Jury Question.*—In an action against an interstate carrier for personal injuries, whether defendant was negligent in failing to make rules and regulations prescribing the conditions under which linemen should be required or permitted to climb trees three feet in diameter for the purpose of cutting away limbs so as to prevent them coming in contact with telegraph wires, *held* for the jury. p. 48.

3. MASTER AND SERVANT.—*Injuries to Servant.—Negligence.— Failure to Furnish Proper Appliances.—Evidence.*—In an action under the federal Employers' Liability Act (§§8657-8665 U. S. Comp. Stat. 1916) by a lineman for injuries sustained when his spurs or climbers broke loose while he was climbing a tree, *held* that there was evidence to warrant a finding that the spurs used by plaintiff were not long enough to be used in safety in climbing the tree in question, as charged in the complaint. p. 48.

4. MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.—Conflict.*—In an action against a railroad company under the federal Employers' Liability Act (§§8657-8665 U. S. Comp. Stat. 1916) by a lineman for injuries sustained when his spurs broke loose while climbing a tree, the jury's answers to interrogatories *held* not inconsistent with general verdict for plaintiff. pp. 49, 50.

5 MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.—Irreconcilable Conflict.*—In an action against the master by a servant for personal injuries, a general verdict for plaintiff is a finding against defendant on every allegation of negligence contained in the complaint, and the general verdict must stand unless the jury's answers to interrogatories cover every alleged act of negligence charged, and conclusively show, as a matter of law, that defendant was not negligent in respect to any act alleged. p. 50.

6. APPEAL.—*Review.—Overruling Motion for Judgment on the Interrogatories.—Scope of Review.*—In determining whether the trial court erred in overruling a motion for judgment on the jury's answers to interrogatories, the court on appeal cannot look to the evidence, but must accept the answers as true. p. 51.

7. COURTS.—*State Courts.—Construction of Federal Laws.—Decisions of Federal Courts.—Conclusiveness.*—In construing an

act of Congress, state courts must follow the decisions of the federal courts. p. 52.

8.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risks.—Jury Question.*—In an action under the federal Employers' Liability Act (§§8657-8665 U. S. Comp. Stat. 1916) by a lineman to recover for personal injuries, the question whether plaintiff assumed the risk of injury incident to climbing a tree three feet in diameter with spurs or climbers furnished by the master which were too short for the work *held* for the jury. p. 52.

9.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Burden of Proof.—Federal Employers' Liability Act.*— In a servant's action for personal injuries under the federal Employers' Liability Act (§§8657-8665 U. S. Comp. Stat. 1916), the burden of proof on the question of assumption of risk is on the master. p. 53.

10.  MASTER AND SERVANT.—*Injuries to Servant.—Dangers Necessarily Incident to Employment.—Liability of Master.*—Where the employer exercises due care in making the way to do the work reasonably safe, and furnishes fit, adequate and reasonably safe tools and appliances, and, notwithstanding the full performance of the duty incumbent upon him, the servant is injured because of dangers necessarily incident to the employment, the employer is not liable. p. 54.

11.  MASTER AND SERVANT.—*Injuries to Servant.—Master's Duty to Furnish Safe Tools and Appliances.—Assumption of Risk.* —When a servant is injured in the line of his duty by reason of the neglect of the master to make the place and the way and means, tools and appliances reasonably safe, he is entitled to recover, unless the negligence of the master and the risk made and increased thereby were both so obvious as to be known and appreciated by a person of ordinary prudence. p. 54.

12.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Presumptions.*—An employe is not presumed to have assumed any new or greater risk, or any risk not necessarily incident to the employment, growing out of the negligence of the master, unless and until he becomes aware of them, or unless the augmented or new risks are so open and obvious as to force themselves upon his observation and consciousness. p. 54.

13.  APPEAL.—*Review.—Refusal of Instructions.*—It is not error to refuse requested instructions, though they are correct, where the subject matter thereof is fully covered by those given. p. 55.

14. APPEAL.— *Briefs.— Presenting Questions for Review.— Admission of Evidence.*—In the absence of a statement in appellant's brief showing the admission of alleged prejudicial evidence or any objection or exception to it, the court on appeal cannot say that such evidence was erroneously admitted.   p. 56.

From Benton Circuit Court; *Burton B. Berry,* Judge.

Action by John Belange against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Frank L. Littleton, Charles M. Snyder* and *Forrest Chenoweth,* for appellant.

*Elmore Barce, Fraser & Isham, William S. Isham* and *Joseph Edward Barce,* for appellee.

McMAHAN, J.—This is an action by appellee under the federal Employers' Liability Act to recover damages for personal injuries alleged to have been caused by the negligence of appellant while appellee was in its service.   The complaint, omitting the formal parts thereof, in substance charges that on October 5, 1917, appellee, then about twenty years of age, was in the employ of appellant as a lineman, to build telegraph lines along its right of way, to set and reset poles, to repair and tighten telegraph wires, and to keep such wires free from contact with each other and from branches and tops of trees; that on said day while appellee was so employed, appellant directed him to climb and go into and among the branches of a large tree standing near its right of way and remove certain limbs so that they would not interfere with the telegraph wires; that appellee did not know and appreciate the danger incident to and growing out of the employment necessarily involved in going up into said tree to remove said limbs, and did not know what means were reason-

ably necessary and proper to be employed in the safe performance of his duty; that the only means furnished him by appellant in going up said tree was what is commonly called "lineman's spurs" or "hooks," the same being a strip of iron extending along and buckled to the legs of the person climbing telegraph poles with a loop or stirrup for the foot to which is affixed a spur or spike intended by the pressure of the leg against the pole to go into the wood and hold the weight while the other leg is extended up and set into the pole; that when said spurs are long and sharp they are reasonably sufficient to enable a person engaged in that service to climb a telegraph pole, but were not reasonably sufficient to enable a person to climb a large tree; that appellee had no knowledge of the danger in attempting to go up a large tree, did not appreciate the danger thereof, and was not warned of such danger by appellant, although it knew the danger was great; that appellee in obedience to the order of appellant and under the direction of its foreman started to climb a tree more than three feet in diameter, with no other aid than a pair of said spurs, for the purpose of cutting out branches to avoid contact with telegraph wires; that appellee climbed said tree, using all the care which he was capable of exercising, and using said spurs to the full capacity of their use under the assurance of the foreman that the spurs would hold, and when he was about forty feet from the ground, the spurs broke out and tore off the bark of the tree, either because they were not long enough to go through the outer weather-beaten bark of the tree, or because they were not sharp enough to penetrate into the live and sound bark or wood of the tree; that by reason of the spurs giving way appellee fell to the ground and was severely injured without any fault on his part and wholly by reason of the negligence of appellant.

The specific charges of negligence on the part of appellant are: (1) That it negligently failed to furnish appellee with a ladder, or other reasonably sufficient means to go up said tree; (2) that it was negligent in ordering appellee to climb said tree in the manner directed and with the means provided; (3) that it was negligent in having in its employ and over appellee the foreman it then had in its employ, for the reason that said foreman was habitually negligent and disregardful of the duty of appellant toward appellee and other employes; (4) that appellant was negligent in that it had not prescribed and fixed any rule providing that ladders or other reasonably sufficient means should be provided for the purpose of enabling employes to go up into the top and among the branches of large trees; (5) that appellant was negligent in furnishing appellee with spurs too short and too dull to go through the outer bark and into the live bark and wood of a tree; (6) that it was negligent in not providing appellee with spurs long enough and sharp enough to go through the outer bark and into the live bark of a tree; (7) that appellant knew and should have known that said spurs were too short and too dull to afford reasonable opportunity for appellee to perform the service required of him, and that it was negligent in ordering him to climb said tree, knowing that it was unsafe and involved extra hazard to appellee in requiring him to perform such services in the manner and form required and with the means then at hand.

The cause being at issue, it was tried by a jury and resulted in a substantial verdict for appellee. The jury, in connection with the general verdict, answered certain interrogatories. Appellant's motion for judgment *non obstante* and its motion for a new trial were overruled. The errors assigned and relied upon for reversal relate to the overruling of these motions. The

specifications in the motion for a new trial are that the verdict is not sustained by sufficient evidence, is contrary to law, the refusal to give, and the giving of certain instructions and admitting certain evidence.

The first contention of appellant is that the court erred in refusing to instruct the jury to return a verdict for appellant. This contention is based upon two propositions: First, that the evidence fails to show any negligence on the part of appellant; Second, that appellee's injuries were due to the risk of the service. It is not necessary for us to enter into a discussion of the elements necessary to constitute actionable negligence. These elements are clearly and correctly stated in *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458, 77 N. E. 850. Appellant, in support of the contention that there was a failure to show any negligence on its part, refers to the allegations of the complaint that the spurs used were too short and too dull, and that there was a negligent failure on the part of appellant to furnish longer and sharper spurs, and insists that no evidence was offered upon either of these subjects; that the only evidence is that appellee, while attempting to climb the tree, fell because the spurs broke out; and that there is no evidence showing whether the breaking out of the spurs was due to the fact that the spurs were too short, too dull, or improperly applied.

One of the acts of negligence charged in the complaint was the defective condition of the spurs. The jury, by its general verdict and also in answer to an interrogatory, found that the spurs were too short. If the evidence is sufficient to sustain this finding, the binding instruction was properly refused. It is true, as contended by appellant, that the spurs furnished appellee were standard spurs such as are generally used throughout the country by telegraph companies; that the pair used by him was selected by him from a number fur-

nished by appellant, so as to get the proper size for his use; that he kept the spurs so selected by him, and on the day of the accident took them from the tool car where he kept them, and fastened them on his feet preparatory to doing the work which he was employed to do. When appellee started to climb the tree from which he fell, he was asked by the foreman then in charge if he could climb it, and he replied, "If I can't climb it, I can coon it," and after he was part way up the tree, the foreman told him if he couldn't climb it to come down.

In addition to the facts above stated, there is evidence tending to prove that the tree which appellee was called upon to climb was a cottonwood, three feet or more in diameter, with bark that was rough and which had indentations one or two inches deep, and about a half inch apart. This tree was near appellant's right of way and about two miles west of Charleston, Illinois. The only appliances furnished for that purpose was a pair of climbers. In climbing the tree, appellee wore gloves to protect his hands, and he was not able to get his fingers in the instertices in the bark. Appellee undertook to climb the tree, and when he had gotten from twenty to twenty-five feet from the ground his spurs broke out and he slipped down to within ten feet from the ground, when he caught himself. The foreman looked up at him, saying, "Well, go on up; that is all right." Following this, appellee again started to go up the tree, and when he got about thirty-eight feet from the ground, the spurs again broke out, and he fell to the ground and was seriously injured. Appellee prior to this time had never climbed a tree anywhere near as large as this one. There were no rules respecting the means to be employed in, or as to the manner of doing this kind of work. The foreman and employes were left to their own discretion in this regard. There is no evi-

dence that any of the employes had ever climbed trees as large as the one which appellee attempted to climb, or that the foreman had ever seen any one attempt to climb such a sized tree, either with or without means other than a pair of spurs. The spikes on the spurs used by appellee were an inch and a half or two inches long. Some time after appellee was injured appellant had an experienced lineman from Anderson climb this tree in order to measure the circumference at various points. This man used new spurs with sharp spikes two and a half inches long, and climbed to a height of thirty-eight feet where the circumference was six feet eleven inches. Another lineman of fifteen years experience living at Noblesville, was employed by appellant to climb this tree and make measurements. In so doing he used climbers of the same make as appellee used, the spikes on the climbers being about three inches long. A number of photographs of the tree which appellee attempted to climb were introduced in evidence, showing the rough bark of the tree with the ridges and indentations in the bark.

Appellant insists that there was not only failure to establish the essential elements of actionable negligence, but that the evidence clearly shows appellee's injuries were caused by a risk of the service which he assumed.

The complaint in this action is founded upon the Act of Congress of April 22, 1908, 35 Stat. at L. 65, and the amendment thereto of April 5, 1910, 36 Stat. at L. 291. Section 2 of this act provides for the right of action by an employe or his personal representative for injuries or death resulting wholly or in part from the negligence of a carrier by railroad in interstate commerce by reason of any defect or insufficiency due to its negligence in its appliances or equipment.

Section 4 of said act reads as follows:

"Sec. 4.   That in any action brought against any com-

Cleveland, etc., R. Co. *v.* Belange—78 Ind. App. 36.

mon carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The complaint alleged that appellee, in obedience to the order of appellant and under the direction of its foreman, started to climb a tree more than three feet in diameter, with no aid other than a pair of spurs, for the purpose of cutting out branches in the top of the tree; that in so doing he exercised all the care which he was capable of exercising, using the spurs to their full capacity, the foreman having assured him the spurs would hold and having ordered him to climb the tree; that he had no knowledge of the danger of attempting to go up a large tree with said spurs, did not appreciate the danger incident thereto and was not warned of such danger by appellant, although appellant knew and appreciated that the danger was great; and that when he was about forty feet from the ground the spurs broke out and tore off the bark of the tree, either because they were too short to go through the outer bark of the tree or because they were not sharp enough to penetrate into the live bark of the tree.

The question as to the assumption of the risk in this case is controlled by the law as declared and interpreted by the Federal Supreme Court. *Seaboard Air Line* v. *Horton* (1914), 232 U. S. 492, 58 L. Ed. 1062; *Pennsylvania Co.* v. *Stalker, Admx.* (1918), 67 Ind. App. 329. 119 N. E. 163. As was said by the court in *Seaboard Air Line* v. *Horton, supra,* in discussing the question of assumed risk: "Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dan-

gers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

And in *Texas, etc., R. Co.* v. *Archibald* (1898), 170 U. S. 665, 42 L. Ed. 1188, in discussing the duty of an employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and the assumption by the employe of the ordinary risks incident to the employment, the court said: "* * * he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employe with respect to appliances furnished. An exception to this general rule is well established, which holds that where an employe receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used. But no reason can be found for and no authority exists supporting the contention that an employe, either from his knowledge of the employer's methods of business or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished, which contain defects that might have been discovered by reasonable inspection. The employer on the one hand may rely on

the fact that his employe assumes the risks usually incident to the employment. The employe on the other has the right to rest on the assumption that appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in carrying on his business, or because by ordinary care he might have known of the methods, and inferred therefrom that danger of unsafe appliances might arise. The employe is not compelled to pass judgment on the employer's methods of business or to conclude as to their adequacy. He has a right to assume that the employer will use reasonable care to make the appliances safe and to deal with those furnished relying on this fact, subject of course to the exception which we have already stated, by which where an appliance is furnished an employe, in which there exists a defect known to him or plainly observable by him, he cannot recover for an injury caused by such defective appliance, if, with the knowledge above stated, he negligently continues to use it. In assuming the risks of the particular service in which he engages the employe may legally assume that the employer, by whatever rule he elects to conduct his business, will fulfill his legal duty by making reasonable efforts to furnish appliances reasonably safe for the purposes for which they are intended; and whilst this does not justify an employe in using an appliance which he knows to be defective, or relieve him from observing patent defects therein, it obviously does not compel him to know or investigate the employer's modes of business, under the penalty, if he does not do so, of taking the risk of the employer's fault in furnishing him unsafe appliances."

Generally speaking, a servant entering into an employment which is hazardous assumes the usual risks of

1. the employment, and those which are apparent to ordinary observation, and when he accepts or continues in the service with knowledge of the character of structures and appliances from which injury may be apprehended, he also assumes the hazards incident to the situation. Risks not obvious which are assumed by the employe are such as exist after the employer has used due care and precaution to guard the employe from danger. Defective conditions or appliances, which by the exercise of reasonable care by the employer may be obviated, and from the consequences of which he is relieved from responsibility to the employe by reason of the latter's knowledge of the situation, are such as are apparent to the employe's observation. *Davidson* v. *Cornell* (1892), 132 N. Y. 228, 30 N. E. 573.

"It may, we think, be laid down as a general rule that the dangers connected with such a business, which are unavoidable after the exercise by the master of proper care and precaution in guarding against them, are risks incident to the employment, and are assumed by those who consent to accept employment under such circumstances. But those dangers which are known, and can be mitigated or avoided by the exercise of reasonable care and precaution, on the part of those carrying on the business, and injuries which happen through neglect to exercise such care, are not incident to the business, and the master is generally liable for damages occurring therefrom." *McGovern* v. *Central, etc., R. Co.* (1890), 123 N. Y. 280, 25 N. E. 373.

2, 3. It was proper under the complaint and the evidence to submit to the jury the question as to whether appellant was not negligent in failing to make rules and regulations prescribing the conditions under which employes should be required or permitted to climb trees of the size and character of the one which

appellee attempted to climb. *Evansville, etc., R. Co.* v. *Holcomb* (1894), 9 Ind. App. 198, 36 N. E. 39; *McGovern* v. *Central, etc., R. Co., supra.* Appellant had provided rules and regulations concerning the manner of going up and standing on ladders to solder wires, but had prescribed no rules or regulations relative to the climbing of trees and cutting the branches therefrom, work clearly not free from danger. There was evidence to justify the jury in finding that the spurs used by appellee were not long enough to be used with safety in climbing the tree in question, and that appellee did not know or appreciate these facts.

There was no error in refusing to instruct the jury to return a verdict for appellant.

Appellant next contends that the facts as found by the jury in answer to the interrogatories show that appellant was not negligent and that the injuries to appellee were due to the risk of his employment.

4.

Appellant makes no claim that appellee was guilty of contributory negligence. The contention is that the answers of the jury show that appellant was not negligent and that appellee assumed the risk.

The jury in answer to interrogatories, after describing the tree, found the bark was strong enough to have supported appellee's weight if the spurs or spikes were inserted on the upper side of the ridges, but that appellee in climbing the tree was prevented from so placing the spurs on account of the size of the tree. Appellee at the time of the accident was employed as a first class lineman, and it was a part of his duty to climb trees and poles and do other work in maintaining the telegraph lines. In climbing poles and trees, it was the usual custom for the men to use Klein climbers, a standard make and approved pattern. The condition of the bark on the tree was open to the observation of appellee.

He did not know or have an opportunity to know the condition of the bark before attempting to climb the tree because he was not familiar with that kind of tree. Before appellee started to climb the tree, the foreman in charge of the work spoke to appellee, saying, "If you do not think you can climb that tree, don't try it." Appellee replied, "If I can't climb it, I can coon it." While appellee was in the act of climbing the tree, the foreman said to him, "If you don't think you can make it, come on down." Without making any protest against climbing the tree, appellee continued to climb it without slipping down until he fell by reason of the spurs breaking out of the bark. The spurs he was using were defective and not in good condition in that they were too short.

Are these facts in irreconcilable conflict with the general verdict? Appellant says they are in that they show no negligence on the part of appellant. The jury by its general verdict found against appellant on every allegation of negligence contained therein. This being true, the general verdict must stand unless the answers cover every alleged act of negligence charged, and conclusively show, as a matter of law, that appellant was not negligent in respect to any act alleged in the complaint. We need not repeat all the allegations in the complaint, wherein it is charged appellant was negligent. In order to show that the court correctly overruled this motion it is only necessary to call attention to the fact that the complaint charged appellant with negligence in failing to provide any rules or regulations for the guidance of the foremen and employes when doing the kind of work which appellee was doing when injured; that it failed to provide appellee with spurs long enough and sharp enough; that it negligently provided him with spurs which it knew were too short and too dull to afford reasonable opportunity for appellee to do the work

he was required to do, and that appellant knew it was unsafe and involved an extra hazard when it required appellee to do the work in the manner and with the means at hand.

The jury by its general verdict found all these allegations in favor of appellee. The only interrogatories submitted to the jury relating to any of these charges of negligence were Nos. 44 and 45, asking if the spurs were in good condition and if not, in what way they were defective. The jury in answering stated that the spurs were defective in that they were too short. Appellant, however, argues that there is no evidence that the spurs were too short. But in determining whether the court erred in overruling the motion for judgment we cannot look to the evidence. We must accept the answers as true. We must also assume that every allegation of negligence in the complaint was proven unless the answers of the jury conclusively show otherwise. And we are forced to hold that the facts found by the jury in answer to the interrogatories are not sufficient to overcome the general verdict in so far as it finds that appellant was negligent.

Do the facts found by the jury conclusively show that appellee assumed the risk of the particular service in which he was engaged at the time he was injured? The complaint alleges that appellee did not know or appreciate the danger involved and incident to and growing out of climbing the tree, and did not know what means were reasonably necessary for the safe performance of that work. While the jury found that appellee had been employed as a groundman and as a second-class lineman for some time, after which he had worked six months as a first-class lineman, and that a part of his duties as a second-class and first-class lineman was to climb poles and trees, there is no finding that he had in fact ever climbed trees, either large or small, or that he

appreciated the danger in attempting to climb a large tree, or that he knew anything about the means reasonably necessary to make that work safe. The complaint, as before stated, negatived his knowledge and appreciation of these things, and in addition thereto alleged that appellant knowing the danger negligently failed to warn him of such dangers. It also alleged that the spurs furnished him were defective, that appellant knew they were defective, that is, too short and too dull, and that it was not safe to do the work with the ways and means at hand. These allegations are by the general verdict found to be true, and there is nothing in the answers of the jury in our judgment to the contrary.

In considering this question, we must keep in mind that we are dealing with an act of Congress, and as said by the court in *Southern R. Co.* v. *Howerton* (1914)., 182 Ind. 208, 105 N. E. 1025, 106 N. E. 369: "Whatever, if any, different construction could have been put upon the act of Congress, the question is foreclosed by the decisions of the Supreme Court of the United States." To the same effect see *Pennsylvania Co.* v. *Stalker, Admr., supra.* Conceding the rule in this class of cases to be that when an employe is injured by defective appliances in the line of his duty, and the employe knew of such defect, or had equal opportunity with the employer to know thereof, damages cannot be recovered for an injury resulting therefrom. The question as to whether appellee assumed the risk of injury was, under the evidence, a question for the jury.

In *Kanawha, etc., R. Co.* v. *Kerse* (1916), 239 U. S. 576, 60 L. Ed. 448, which was an action under the Employers' Liability Act, the court in discussing the question of assumed risk said: "The burden of proof of the assumption of risk was upon the defendant, and unless the evidence tending to show it was clear and from

unimpeached witnesses and free from contradiction, the trial court could not be charged with error in refusing to take the question from the jury."

The court, however, held that the trial court erred in refusing an instruction to the effect that under certain conditions the injured party "must be held to have assumed the risk of being injured  *  *  *  and there can be no recovery by the plaintiff herein." While the court held the refusal to give this instruction was erroneous, it said: "But this does not result in a reversal of the judgment under review, because by specific findings of fact the jury negatived the hypothesis upon which alone the instruction was based. In response to particular interrogatories submitted by the court, they found that Barry did not know that the piece of timber which stretched over the track, and (of course) did not know the timber was so low it would not clear him when standing upon the top of the box car. A judgment is not to be reversed for an error by which the plaintiff in error cannot have been prejudiced."

Thus it was held that the refusal of the court to give the instruction requested became legally insignificant when the jury in its findings distinctly negatived the facts that made up the hypothesis under which the instruction was tendered, and that the error in refusing the instructions was rendered wholly immaterial and harmless.

In accordance with the rule announced by the court in *Kanawha, etc., R. Co.* v. *Kerse, supra,* we hold that the burden of proof on the question of the assumption of risk was on appellant. *Ames, Admr.,* v. *Lake Shore, etc., R. Co.* (1893), 135 Ind. 363, 25 N. E. 117, cited by appellant, is not controlling.

If, as a matter of fact, the employer exercised due

care in making the way to do the work reasonably safe, and furnished fit, adequate and reasonably safe 10-12. tools and appliances, and notwithstanding the full performance of the duty incumbent on the master, and when the master is free from fault in these respects, the servant is injured because of dangers necessarily incident to the employment, the law absolves the master from responsibility. But if the servant is injured in the line of his duty by reason of the neglect of the master to make the place and the ways and means, tools and appliances reasonably safe, he is entitled to recover, unless the negligence of the master and the risk arising therefrom are known to the employe, or unless the negligence of the master and the risk made or increased thereby were both so obvious as to be known and appreciated by a person of ordinary prudence. An employe is not presumed to have assumed any new or greater risk, or any risk not necessarily incident to the employment, growing out of the negligence of the master, unless and until he becomes aware of them, or unless the augmented or new risks are so open and obvious as to force themselves upon his observation and consciousness. Upon the question of assumption of risk, "the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employee." *Texas, etc., R. Co.* v. *Archibald, supra; Choctaw, etc., R. Co.* v. *McDade* (1903), 191 U. S. 64, 48 L. Ed. 96; *Chesapeake, etc., R. Co.* v. *Proffitt* (1916), 241 U. S. 462, 60 L. Ed. 1102; *Pittsburgh, etc., R. Co.* v. *Ireton* (1920), 73 Ind. App. 449, 126 N. E. 431; *Pittsburgh, etc., R. Co.* v. *Parish* (1902), 28 Ind. App. 189, 62 N. E. 514, 91 Am. St. 120.

The answers of the jury are not in our judgment in conflict with the general verdict and we hold there was no error in overruling the motion for judgment *non obstante.*

What we have heretofore said in relation to the refusal of the court to instruct the jury to return a verdict for appellant covers the contentions that the verdict is not supported by sufficient evidence, and is contrary to law, against appellant.

Appellant next contends that the court erred in refusing to give certain instructions. An examination of the record shows that if such instructions were proper, they were fully covered by instructions given. Many of the instructions refused, related to the doctrine of assumed risk, and omitted the question whether appellee had knowledge or was chargeable with knowledge. As was said by the court in *Chesapeake, etc., R. Co.* v. *Proffitt, supra*: "* * * while an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work) and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it. The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence."

The court fully and fairly instructed the jury, and without going into a detailed discussion of the instructions given or of those refused, it is sufficient to say we have given careful attention to the contentions of appellant in this matter and find the instructions given were proper and we are satisfied that there is no re-

versible error in the giving or the refusing to give any instruction about which complaint has been made.

The next and last contention of appellant is that the court erred in permitting appellee to repeat a conversation he had with appellant's foreman, Mr. Mathews, wherein the latter, in effect, said that if he had been present at the time of the accident it would not have happened. No reason is given in support of this contention, and after a careful examination of the evidence as set out in the brief, we fail to find any statement showing the admission of such evidence or any objection or exception to it. No error is therefore shown in relation to the admission of this evidence.

Judgment affirmed.